IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LISA A. HICKS,** | : | **CIVIL ACTION** |
| Plaintiff, | : | |
| | : | |
| v. | : | **JURY TRIAL DEMANDED** |
| | : | |
| **ACE AMERICAN INSURANCE COMPANY,** | : | |
| **ACE INA HOLDINGS, INC., and** | : | |
| **ACE LIMITED,** | : | No. |
| Defendants. | : | |

## COMPLAINT

1. Lisa Hicks began her employment at ACE American Insurance Company in December 1999 as Assistant Vice President of Communications. In short order, due to her success on the job, she was promoted to the position of Vice President of Communications and received two pay raises, a bonus and ACE Limited stock options. In late 2001, however, her career took a turn for the worse. When Ms. Hicks learned that her boss, the Senior Vice President in charge of Communications, was leaving the company, she expressed an interest in his job. She was informed, however, by a member of senior management that the job he held was reserved for men. Faced with a glass ceiling, Ms. Hicks nonetheless applied for the job and reported what she had been told to the Company's Human Resources Department. Subsequently, she was subject to retaliation in the form of harassment, diminished job responsibilities and a negative performance review. In June 2002, the Company hired a man, less qualified and

experienced than Ms. Hicks, to be its Senior Vice President of Communications. Three months later, in September 2002, he fired Ms. Hicks supposedly because of her poor performance, but that was a pretext: the real reason she was fired was because of her gender (female) and because she had complained of sex discrimination.

    2.    Ms. Hicks seeks redress for her non-promotion and job termination pursuant to the anti-discrimination and non-retaliation provisions of Title VII of the Civil Rights Act of 1964 ("Title VII"), respectively codified at 42 U.S.C. § 2000e-2(a)(1) and 42 U.S.C. § 2000e-3(a).

**Jurisdiction**

    3.    The Court has subject matter jurisdiction over Ms. Hicks's sex discrimination and retaliation claims pursuant to Section 706(f)(3) of Title VII, 42 U.S.C. § 2000e-5(f)(3).

**Venue**

    4.    Venue over Ms. Hicks's claims is proper in this Court pursuant to Section 706(f)(3) of Title VII, 42 U.S.C. § 2000e-5(f)(3), since those claims arose in this judicial district and were it not for defendants' unlawful actions, she would have continued working for ACE in this district.

**Parties**

5. Plaintiff, Lisa A. Hicks, currently resides at 6728 Little Branch Road, York, South Carolina 29745.

6. Defendant ACE American Insurance Company, also known as ACE USA, has offices located at Two Liberty Place, 1601 Chestnut Street, Philadelphia, Pennsylvania 19103.  It provides a full range of insurance products and services to customers in the United States.

7. Defendant ACE INA Holdings, Inc. is the domestic parent corporation of ACE American Insurance Company.  ACE INA Holdings, Inc. also has offices located at Two Liberty Place, 1601 Chestnut Street, Philadelphia, Pennsylvania 19103.

8. Defendant ACE Limited is the Bermuda-based holding company of the ACE Group of Companies and is the parent corporation of defendants ACE American Insurance Company and ACE INA Holdings, Inc.  Through its subsidiaries, ACE Limited provides a full range of insurance and reinsurance products to customers throughout the world.  It maintains its global headquarters at 17 Woodbourne Avenue, Hamilton HM08, Bermuda.

9. Defendants acted jointly in regard to the adverse employment actions at issue in this case and thus constitute a single employer for purposes of the claims raised against them by Ms. Hicks.

**Exhaustion of Administrative Remedies**

10. On November 13, 2002, Ms. Hicks filed a charge of sex discrimination against all the defendants with the Philadelphia District Office of the United States Equal Employment Opportunity Commission ("EEOC"). The charge, No. 170-2003-00420, alleged that the defendants unlawfully denied Ms. Hicks the position of Senior Vice President of Communications and unlawfully terminated her employment on account of her gender, female.

11. In the documents accompanying her charge, Ms. Hicks also alleged that defendants retaliated against her by not promoting her to the position of Senior Vice President of Communications and by dismissing her from employment. The EEOC investigated that retaliation claim in addition to the charge of sex discrimination Ms. Hicks filed against the defendants.

12. By letter dated February 18, 2004, the EEOC terminated its jurisdiction over Ms. Hicks's charge and informed her of her right to file a Title VII suit against the defendants within 90 days of her receipt of that notice.

13. This action has been filed in accordance with the suit-filing provisions of Title VII and the above-referenced right-to-sue letter.

**Factual Allegations**

    A.    **Background Facts**

    14.    Ms. Hicks began her employment with ACE USA, a/k/a Ace American Insurance Company, in December 1999 as Assistant Vice President of Communications.

    15.    The position Ms. Hicks held was the senior most role in communications at ACE USA. In that capacity, she reported directly to Dennis Reding, the President of ACE INA Holdings, Inc.

    16.    In June 2000, due to her excellent performance, ACE USA promoted Ms. Hicks to the position of Vice President of Communications with a 5% increase in her base pay.

    17.    In March 2001 Ms. Hicks received a positive performance review from Mr. Reding, another 5% increase in her pay, a $30,000.00 bonus and an award of 1,200 ACE Limited stock options

    18.    Throughout the first fourteen months of her employment with ACE USA, Ms. Hicks continually received positive feedback from the numerous ACE clients that she and her staff served.

    19.    In April 2001 Dennis Reding left ACE INA Holdings, Inc.

20. Following Mr. Reding's departure, the communications and the other support departments of ACE USA were placed under the direction and supervision of Dominic Frederico, the Chairman of ACE INA and a Vice Chairman of ACE Limited.

21. However, whereas all the male executives of the support departments of ACE USA were instructed to report directly to Mr. Frederico, Ms. Hicks, the only female executive at ACE USA, was told not to report to Mr. Frederico.

22. Instead, Ms. Hicks was told to report to Larry Owen who had just been hired as Senior Vice President of Government Affairs for ACE INA Holdings, Inc.

23. As a result of this arrangement, all the direct reports to Mr. Frederico were men.

### B. Plaintiff's Claims of Gender Discrimination

24. On November 29, 2001, Wendy Davis-Johnson, the head of Global Communications for ACE Limited, told Ms. Hicks that Larry Owen would be dismissed from employment in the very near future.

25. Ms. Hicks told Ms. Davis-Johnson that she would like to be considered for Mr. Owen's position.

26. In reply, Ms. Davis-Johnson informed Ms. Hicks that she should not apply for Mr. Owen's position since the senior management team of the Company headed by Mr. Frederico was a "boy's club" and "women aren't allowed in."

27.     Ms. Hicks protested and told Ms. Davis-Johnson that it was not fair to exclude women from senior management positions at ACE INA Holdings, Inc.

28.     On December 10, 2001, Larry Owen's employment with ACE INA Holdings, Inc. was terminated.

29.     The next day, on December 11, 2001, Ms. Hicks submitted her application for the position of Senior Vice President of Communications via e-mail to Peter O'Connor, the global head of Government Affairs for ACE INA Holdings, Inc. She applied because she was qualified for the position and believed she should be afforded a fair opportunity to be considered for the job.

30.     Approximately two weeks later, Mr. O'Connor appointed Kevin McArdle, a peer of Ms. Hicks, as acting Senior Vice President of Communications.

31.     Following his appointment, Mr. McArdle harassed and threatened Ms. Hicks, discredited her to her peers and clients and criticized her for applying for the position of Senior Vice President of Communications.

32.     In April 2002 Mr. McArdle resigned his employment with ACE INA Holdings, Inc.

33.     In June 2002, ACE INA Holdings, Inc. hired John Herbkersman, an outside applicant, as its Senior Vice President of Communications.

34.     It did so not because Mr. Herbkersman was the most qualified person for the job; quite the contrary, it did so because he is a man and in order to discriminate

against Ms. Hicks, a qualified female applicant for the job. In fact, Ms. Hicks was never even given an interview for the position to which Mr. Herbkersman was appointed.

35. Three months later, on September 30, 2002, without notice or warning, and in contravention of ACE's progressive disciplinary policy, Mr. Herbkersman fired Ms. Hicks because, he said, she was not the caliber of person ACE wanted as a Vice President.

36. That, however, was not the real reason Ms. Hicks was fired. Rather, she was fired because of her gender (female) in willful and reckless violation of her rights under Title VII. Moreover, as pled in paragraphs 37 - 41, *infra*, Ms. Hicks was also fired in willful and reckless retaliation for her complaints of sex discrimination.

### C.   Plaintiff's Claims of Retaliation

37. Ms. Hicks reported and complained to her Human Resources representative, Denise Carson, that she had been told by Ms. Davis-Johnson not to apply for the position of Senior Vice President of Communications because women were not welcome in that position. See ¶ 26, *supra*.

38. Ms. Hicks also reported and complained to Ms. Carson that Kevin McArdle was harassing and threatening her because she had applied for the position of Senior Vice President of Communications. See ¶ 31, *supra*.

39. Defendants did not make a good faith effort to investigate Ms. Hicks's complaints of sex discrimination.

40. Instead, in reprisal for those complaints, defendants engaged in a campaign of retaliation against Ms. Hicks that included the following actions taken against her:

   a. For his part, Mr. O'Connor removed a number of the job duties and responsibilities of Ms. Hicks and reassigned them to Kevin McArdle;

   b. Mr. McArdle, in turn, continued to harass Ms. Hicks and discredit her to her clients and her staff;

   c. In doing so, Mr. McArdle told Ms. Hicks that upper management was upset that she had applied for the position of Senior Vice President of Communications and warned her to "watch out" because they would be protecting "his back";

   d. Ms. Davis-Johnson, who as an employee of ACE Limited was not permitted to interfere with the operations of its U.S. subsidiary, prohibited Ms. Hicks from performing assignments that had been requested of her by her clients;

   e.  Though there was no basis for it, in March 2002, Mr. O'Connor gave Ms. Hicks her first and only negative performance review;

   f.  In June 2002 Ms. Hicks was denied the position of Senior Vice President of Communications and John Herbkersman was hired into that position; and

   g.  On September 30, 2002 Mr. Herbkersman fired Ms. Hicks though he had no valid basis for doing so.

  41.  Each of the actions described in paragraph 40(a) - (g) was undertaken by defendants in willful and reckless retaliation for the complaints of sex discrimination that Ms. Hicks reported to her human resources representative, Denise Carson.

  **D.**  **Plaintiff's Damages**

  42.  As a direct and proximate result of defendants' violations of her rights, Ms. Hicks has suffered, and will continue to suffer, a loss of earnings and earning capacity, including lost wages, bonuses, pay increases, pension credits, stock options and other emoluments of employment to which she would have been entitled but for her non-promotion to the position of Senior Vice President of Communications and her termination from employment from ACE American Insurance Company.

43. As a further direct and proximate result of defendants' violations of her rights, Ms. Hicks has incurred physical pain and sickness, emotional distress, humiliation, harm to her reputation, loss of confidence and self-esteem, and the loss of enjoyment of life's pleasures.  She also was forced to sell her home in southern New Jersey and relocate to South Carolina in an effort to obtain suitable work for herself and her family -- for which she had been the principal source of support.

## CLAIMS FOR RELIEF

### Count I: First Claim of Sex Discrimination

44. Ms. Hicks incorporates by reference the allegations set out in paragraphs 1 through 43 of her Complaint.

45. By denying her the position of Senior Vice President of Communications, defendants discriminated against Ms. Hicks because of her sex in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1).

### Count II: Second Claim of Sex Discrimination

46. Ms. Hicks incorporates by reference the allegations set out in paragraphs 1 through 45 of her Complaint.

47. By terminating her employment, defendants discriminated against Ms. Hicks because of her sex in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1).

### Count III: Claim for Retaliation

48. Ms. Hicks incorporates by reference the allegations set out in paragraphs 1 through 47 of her Complaint.

49. By diminishing her job duties, by harassing and discrediting her, by denying her the position of Senior Vice President of Communications, by issuing her a

negative performance review and by terminating her employment, defendants retaliated against Ms. Hicks in reprisal for her complaints of sex discrimination in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a).

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, Lisa A. Hicks, respectfully requests the Court to enter judgment in her favor and against all defendants, and to include in its judgment the following relief:

(a) an award of back and front pay with interest as authorized by Title VII;

(b) an award of non-economic compensatory damages as authorized by Title VII;

(c) an award of punitive damages as authorized by Title VII;

(d) an award of reasonable counsel fees and costs as authorized by Title VII; and

(e) such other legal and equitable relief as may be just and proper under the circumstances.

## JURY DEMAND

Plaintiff Lisa A. Hicks demands a trial by jury on all the legal claims she has raised in her Complaint.

Respectfully submitted,

RAYNES, McCARTY, BINDER, ROSS & MUNDY

By: **/s/ Harold I. Goodman, Esquire**
     Harold I. Goodman
     1845 Walnut Street, 20th Floor
     Philadelphia, PA  19103
     Telephone No.:   215 - 568 - 6190
     Facsimile No.:   215 - 988 - 0618
     E-Mail:  higoodman@raynesmccarty.com

     Counsel for Plaintiff Lisa A. Hicks

Dated:   April 21, 2004